J-A03029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANSORD RASHIED | |
| Appellant | No. 2912 EDA 2014 |

Appeal from the Judgment of Sentence August 27, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000063-2013
CP-46-CR-0001096-2013
CP-46-CR-0001222-2013
CP-46-CR-0001379-2013
CP-46-CR-0004468-2013

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 02, 2016**

Appellant, Ansord Rashied, appeals from the August 27, 2014 aggregate judgment of sentence of five to ten years' imprisonment, plus one year of probation. After a bench trial, Appellant was found guilty of one count of burglary, three counts of criminal attempt, two counts of fleeing from a police officer, and one count each of criminal trespass, possession of an instrument of a crime (PIC), loitering, criminal mischief, recklessly endangering another person (REAP), resisting arrest, flight to avoid apprehension, theft by unlawful taking, unauthorized use of a motor vehicle,

reckless driving, careless driving, driving at an unsafe speed, and failure to stop at a red signal.[1]  After careful review, we affirm.

The trial court summarized the relevant factual history of this case as follows.

> On December 22, 2011, around midnight, Robert Marchozzi was asleep on the couch in the living room of his home located at 114 East Germantown Pike, Whitemarsh Township, Montgomery County, Pennsylvania, when he was startled by a loud noise coming from his partially renovated addition.  Once awakened, Mr. Marchozzi saw a bright light coming through a crack in the door leading to the addition, which was approximately four (4) feet away from where he slept.  Consequently, Mr. Marchozzi jumped up and quickly turned on the light to illuminate the addition.  He then opened the door leading into the addition, and saw a man wearing dark clothes and a dark hoody run out the back door.  The man was approximately 5'9", maybe 190-200 lbs.  As he called 911, Mr. Marchozzi ran to the front of the house to keep eyes on the intruder whom he observed running in the direction of Germantown Pike.  Mr. Marchozzi noted that the intruder slowed his pace as he neared Germantown Pike, and then ultimately started walking.  By the time that Mr. Marchozzi lost sight of the intruder, police cars were responding to the scene.  Upon further investigation, Mr. Marchozzi observed that the back door to his addition was dented and broken in, and the door jamb was completely ripped off on one side.  There were also some tools thrown on the ground.

---

[1] 18 Pa.C.S.A. §§ 3502(a), 901(a), 75 Pa.C.S.A. § 3733(a), 18 Pa.C.S.A. §§ 3503(a)(1)(ii), 907(a), 5506, 3304(a)(5), 2705, 5104, 5126(a), 3921(a), 3928(a), 75 Pa.C.S.A. §§ 3736(a), 3714(a), 3361, 3112(a)(3)(i), respectively.

Within minutes of the incident, responding Officer Hannon patrolled the nearby area. Officer Hannon used his thermal imager in order to identify any recently driven vehicles. Approximately fifteen (15) minutes later, he observed a light Toyota Tundra pick-up truck which was "very hot," and which likely had been used within the last half hour. When the Officer ran the Pennsylvania plate on the Toyota, it was identified as a temporary tag issued from Norristown. Officer Hannon then drove by the Toyota three (3) times, but did not observe anyone inside. He next parked his car in a nearby obscure location and watched the Toyota. It was raining heavily at the time. After approximately fifteen (15) more minutes, a light turned on in the Toyota, the passenger door opened, the lights went dark, and the vehicle drove off. Officer Hannon followed the vehicle and effectuated a vehicle stop. When Officer Hannon approached the vehicle, he got a clear look at the driver and also observed only one person in the Toyota. Officer Hannon also noticed that the driver wore a black long[-]sleeved hoody [sic]. When Officer Hannon attempted to question the driver, the driver abruptly sped off, leading the officer on a chase. This chase terminated for safety reasons when [Appellant]'s vehicle entered 76 eastbound toward Philadelphia.

The next day, Whitemarsh Detective Zadroga used the Toyota license plate information and eventually learned that the operator of the vehicle was [Appellant]. Detective Zadroga and other officers then proceeded to [Appellant]'s address as indicated on his license, namely, 4716 Wallace Place, Philadelphia. After some searching, the officer located the vehicle in a nearby parking lot, with the doors unlocked and the keys inside on the floor. There was no license plate affixed to the Toyota. A later vehicle search uncovered, *inter alia*, wet, black high-top sneakers, wet socks stuck in the sneakers; and, a wet black hoody. The temporary tag previously noted on the Toyota was also found underneath the vehicle's seat.

Thereafter, Detective Zadroga contacted [Appellant] and arranged a meeting; however, [Appellant] failed to show up for the appointment. Consequently, an arrest warrant was issued for [Appellant]. Almost one year later, [Appellant] was apprehended and taken into custody. [Appellant] subsequently provided a statement to police. In this statement, [Appellant] admitted that he was in Whitemarsh Township on Germantown Pike on the night of the burglary in issue; [Appellant] admitted that his vehicle was parked on Germantown Pike on the night of the burglary at issue; [Appellant] admitted that he drove away from his parking spot on Germantown Pike and was stopped shortly thereafter; and, [Appellant] admitted that when the officer approached his Toyota during the vehicle stop, he abruptly drove off. However, [Appellant] did <u>not</u> admit that he was the perpetrator of the burglary. Instead, [Appellant] denied wearing a black hoody [sic] on the night in question. He also claimed that he had a passenger in his vehicle at the time of the vehicle stop who was the perpetrator of the burglary. [Appellant] claimed that his passenger's name was Boogie/James Johnson.

Trial Court Opinion, 4/29/15, 1-5 (internal citations omitted).

On February 11, 2013, the Commonwealth filed an information at docket number CP-46-CR-63-2013, charging Appellant with one count of burglary, three counts of criminal attempt, and one count each of criminal trespass, PIC, loitering, criminal mischief, REAP, resisting arrest, fleeing from a police officer, reckless driving, careless driving, driving at an unsafe speed, and failure to stop at a red signal. At some point, the Commonwealth also charged Appellant at docket number CP-46-CR-1096-2013 with one count of unauthorized use of a motor vehicle. On March 26, 2013, the Commonwealth filed an information at docket number CP-46-CR-

1222-2013, charging Appellant with one count of fleeing from a police officer, and another information at docket number CP-46-CR-1379-2013, charging Appellant with another count of fleeing from a police officer, as well as one count each of driving with a suspended license,[2] flight to avoid apprehension, and resisting arrest. On August 27, 2013, the Commonwealth filed another information at docket number CP-46-CR-4468-2013, charging Appellant with one count each of receiving stolen property,[3] and theft by unlawful taking.

Appellant proceeded to a two-day bench trial on all charges at docket number CP-46-CR-63-2013 on April 7, 2014. At the conclusion of which, the trial court found Appellant guilty on all charges at docket number CP-46-CR-63-2013. On August 27, 2014, Appellant pled guilty to unauthorized use of a motor vehicle at docket number CP-46-CR-1096-2013, fleeing from a police officer at docket number CP-46-CR-1222-2013, flight to avoid apprehension at docket number CP-46-CR-1379-2013, and theft by unlawful taking at docket number CP-46-CR-4468-2013. That same day, the trial court imposed an aggregate sentence of five to ten years' imprisonment, to

---

[2] 75 Pa.C.S.A. § 1543(a).

[3] 18 Pa.C.S.A. § 3925(a).

be followed by one year of probation.[4]  All other charges were *nolle prossed*.

Appellant filed a timely post-sentence motion on September 5, 2014, which

was denied after a hearing on September 18, 2014.  On October 15, 2014,

Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following eight issues for our review.

> 1.  [Whether t]he trial court erred in finding [A]ppellant guilty of the burglary and related charges in that the verdict was against the weight of the evidence when the trial court failed to properly consider key factors, including, but not limited to:  that the burglar was running, [A]ppellant was not out of breath; the officer's testimony that it was the passenger's side door that opened; the discrepancy in the description of the burglar versus [A]ppellant; the fact that [A]ppellant was not wearing wet clothing; the length of time between the burglary and the officer's supervision of the truck; the discrepancy

---

[4] Specifically, at docket number CP-46-CR-63-2013, the trial court sentenced Appellant to four to eight years for burglary, and a concurrent one to two year sentence of imprisonment for fleeing from a police officer.  At docket number CP-46-CR-1096-2013, the trial court sentenced Appellant to a consecutive one year term of probation.  At docket number CP-46-CR-1222-2013, the trial court sentenced Appellant to a consecutive one to two year term of imprisonment for fleeing from a police officer.  At docket number CP-46-CR-1379-2013, the trial court sentenced Appellant to a concurrent term of one to two years' imprisonment for flight to avoid apprehension.  Finally, at docket number CP-46-CR-4468-2013, the trial court sentenced Appellant to a concurrent one and one-half to seven year term of imprisonment for theft by unlawful taking.  Therefore, the aggregate sentence is five to ten years' imprisonment, plus one year of probation.

[5] Appellant and the trial court have timely complied with Pennsylvania Rule of Appellate Procedure 1925.

between what an expert found about the shoes and the detective's assertions[?]

2. [Whether t]he trial court erred in finding [A]ppellant guilty of the burglary and related charges in that the verdict was against the weight of the evidence when the trial court failed to properly consider the equally plausible theory that the same key factors led to innocence[?]

3. [Whether t]he trial court erred in finding [A]ppellant guilty of the burglary and related charges in that the verdict was not supported by sufficient evidence to show that [A]ppellant was the burglar[?]

4. [Whether t]he trial court erred in allowing the Commonwealth to engage in burden shifting when arguing that [A]ppellant failed to give information to the detective, when at all times the Commonwealth must show guilt beyond a reasonable doubt[?]

5. [Whether t]he trial court erred in allowing the Commonwealth, during closing, to engage in burden shifting when arguing that [A]ppellant failed to give a reason for being in Whitemarsh, when at all times the Commonwealth must show guilt beyond a reasonable doubt[?]

6. [Whether t]he trial court erred in not engaging [A]ppellant in a colloquy about his decision to waive his right to testify[?]

7. [Whether t]he trial court erred when there was no on the record colloquy as to the rejection of the plea offer, and the potential exposure if the plea was not accepted, therefore, [A]ppellant's decision to pursue a trial was not voluntary, knowing and intelligent[?]

8.  [Whether t]he trial court erred in denying the motion for [a] mistrial requested by the defense, after Detective Zadroga testified that [A]ppellant was arrested by another county[?]

Appellant's Brief at 4-6.

We elect to address Appellant's third issue first, as the remedy for lack of sufficient evidence is a discharge order, rather than a new trial. **Commonwealth v. Stokes**, 38 A.3d 846, 853 (Pa. Super. 2011). We begin by noting our well-settled standard of review. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [finder of fact's] verdict beyond a reasonable doubt." **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, **Patterson v. Pennsylvania**, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of

the evidence produced is free to believe all, part or none of the evidence."

*Id.* (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* **Diamond v. Pennsylvania**, 135 S. Ct. 145 (2014).

Instantly, Appellant avers that the evidence was insufficient on all charges regarding the element of identity.[6]  Appellant's Brief at 26-29.  It is axiomatic that identity is an element of all criminal offenses in Pennsylvania. **Commonwealth v. Brooks**, 7 A.3d 852, 857 (Pa. Super. 2010), *appeal denied*, 21 A.3d 1189 (Pa. 2011).  Furthermore, "[e]vidence of identification need not be positive and certain to sustain a conviction."  **Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*), *appeal denied*, 54 A.3d 348 (Pa. 2012).  "Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a

---

[6] We note that Appellant's Rule 1925(b) statement did not specify on which charges other than burglary the Commonwealth failed to present sufficient evidence of identity.  However, we reject the Commonwealth's assertion that Appellant has waived this issue under **Commonwealth v. Garland**, 63 A.3d 339 (Pa. Super. 2013), which requires the Rule 1925(b) statement to specify which elements of which offenses contained insufficient evidence.  As noted above, identity is an element of every offense in Pennsylvania; therefore, if the Commonwealth presented sufficient evidence of identity on one offense, the same evidence would be sufficient for identity on all offenses in this case.  We further reject the Commonwealth's assertion that Appellant has waived this issue for lack of development in his brief.  **See generally** Commonwealth's Brief at 14-21.

perpetrator." *Id.* This Court has previously held that a positive identification of one eyewitness is satisfactory to overcome a challenge to the sufficiency of the Commonwealth's proof of identity. *See Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (concluding the evidence was sufficient where "the complainant testified positively and without qualification that [the defendant] perpetrated the offenses[]"), *appeal denied*, 960 A.2d 838 (Pa. 2008), *citing Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978).

In this case, the Commonwealth presented the testimony of Robert Marchozzi, the victim in this case. Marchozzi testified that he fell asleep around 10:00 p.m. on the night in question when he was woken up by a loud noise. N.T., 4/7/14, at 15. Marchozzi testified that he discovered a man who was approximately five feet, nine inches tall, weighing between 190-200 pounds inside his home and running out the front door. *Id.* at 16-17. Marchozzi testified that the intruder was wearing a black hooded sweatshirt. *Id.* at 17.

The Commonwealth also presented Officer Hannon, who testified that within minutes of this incident, he patrolled the area with a thermal imaging device to see which parked vehicles nearby were giving off heat, indicating they had been used recently. *Id.* at 38-39. Officer Hannon discovered only one vehicle, a Toyota Tundra, with a temporary license plate. *Id.* Officer Hannon drove by the vehicle three times, trying to peer inside each time.

*Id.* at 39-40. Officer Hannon parked his vehicle about 75 yards from the Tundra to observe it. *Id.* at 41. After approximately 15 minutes, Officer Hannon noticed the interior light of the vehicle illuminate, even though he had not observed anyone enter the vehicle through the driver's side door. *Id.* at 41-42. The Tundra's engine started, then the vehicle "immediately took off[.]" *Id.* at 42. Officer Hannon activated his emergency lights and pulled the vehicle over. *Id.* at 43. Officer Hannon approached the driver and saw him face-to-face from approximately eight to ten feet away. *Id.* Officer Hannon identified the driver as Appellant and testified that he saw no one else in the vehicle. *Id.* at 44. Officer Hannon observed Appellant wearing a black, long-sleeved hooded sweatshirt. *Id.* at 45. Appellant took off in the Tundra and led police on a chase, which ended when Appellant got on eastbound Interstate 76 towards Philadelphia. *Id.* at 46-47.

The next day, the police, using the license plate and the information from Appellant's driver's license, discovered a Tundra in a parking lot near Appellant's residence with no license plate. *Id.* at 72-73. After obtaining a search warrant, the police found a black hooded sweatshirt, two pairs of socks, and a pair of black high-top sneakers, all of which were wet.[7] A DNA sample from one of the wet socks gave a high probable match to Appellant. *Id.* at 97.

---

[7] Officer Hannon testified that when he stopped Appellant in the Tundra on the night of the burglary, it was raining heavily. *Id.* at 46.

After careful review of the certified record, we conclude Appellant is not entitled to relief. As noted above, the intruder was identified as wearing a black hooded sweatshirt inside Marchozzi's home. Appellant was found shortly thereafter by Officer Hannon wearing a black hooded sweatshirt near the scene of burglary, inside the only vehicle police could identify has having been used recently based on thermal imaging. Based on these considerations, we conclude the Commonwealth provided sufficient evidence to establish Appellant's identity. As a result, Appellant is not entitled to relief on this issue.

We next address Appellant's first two issues, which pertain to the weight of the evidence. *See generally* Appellant's Brief at 21-25. However, before we may address these claims, we must consider whether Appellant has waived these issues for lack of preservation in the trial court. Pennsylvania Rule of Criminal Procedure 607 discusses claims pertaining to the weight of the evidence and provides, in relevant part, as follows.

> **Rule 607. Challenges to the Weight of the Evidence**
>
> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>      (1) orally, on the record, at any time before sentencing;
>
>      (2) by written motion at any time before sentencing; or
>
>      (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]"). Our Supreme Court has explained that preserving a weight of the evidence claim in the trial court is important because the failure to do so "deprive[s the trial] court of an opportunity to exercise discretion on the question of whether to grant a new trial." *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (footnote omitted), *cert. denied*, *Sherwood v. Pennsylvania*, 559 U.S. 1111 (2010).

As noted above, Appellant filed a timely post-sentence motion, but he did not raise any issue pertaining to the weight of the evidence. In addition, we have reviewed the record and Appellant did not raise this issue at any time during sentencing or through any other filing preceding sentencing. Instead, Appellant raised this issue for the first time in his Rule 1925(b) statement. This was not sufficient to preserve this claim for our review. *See Commonwealth v. Thompson*, 93 A.3d 478, 490-491 (Pa. Super. 2014) (concluding weight claim was waived when raised for the first time in Rule 1925(b) statement even though "the trial court reviewed the substance of his weight of the evidence claim in its Rule 1925(a) opinion[]"). As a result, we conclude Appellant's weight of the evidence claims are waived for want of preservation.

We elect to next address Appellant's fourth, fifth, and eighth issues together for ease of disposition and analysis. In his combined fourth and

fifth issues, Appellant avers the Commonwealth engaged in burden shifting when it argued that he failed to give information to the police and failed to give police a reason for him being in Whitemarsh Township on the night in question. Appellant's Brief at 35-36. Further, in his eighth issue, Appellant avers that the trial court erred in denying his motion for a mistrial when the Commonwealth elicited testimony that Appellant was arrested in another county. *Id.* at 43.

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Bedford*, 50 A.3d 707, 715-716 (Pa. Super. 2012) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 57 A.3d 65 (Pa. 2012). Likewise, we note the following standard of review for claims regarding motions for a mistrial.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is

abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013) (citation omitted).

In this case, during its summation, the Commonwealth gave the following statement.

> Finally, [Appellant] goes on to tell you that he was in the area to meet up with a female from 59th and Redfield. That's what he says in his statement.
>
> Clearly, that's nowhere near Whitemarsh. But [Appellant] never told Detective Zadroga any reason why he was in Whitemarsh. He just said he was meeting up with a female from 59th and Redfield.

N.T., 4/8/14, at 26. Appellant objected on the basis that it violated Appellant's right not to testify in his own defense. *Id.* at 35. The trial court sustained the objection. *Id.* Additionally, Appellant moved for a mistrial during the Commonwealth's questioning of Detective Zadroga, when the detective testified that Appellant was arrested by the Philadelphia Police Department in 2012 on separate charges. N.T., 4/7/14, at 103. Appellant immediately objected and made a motion to strike, which the trial court granted. *Id.* Appellant then moved for a mistrial, which the trial court denied. *Id.* at 104-105. On appeal, Appellant argues that he was entitled

to a new trial on the basis of the Commonwealth's and Detective Zadroga's improper remarks.

Assuming *arguendo* that the Commonwealth's and Detective Zadroga's remarks were improper, it does not follow that a new trial is warranted if the error is harmless. "[A]n error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict." **Commonwealth v. Luster**, 71 A.3d 1029, 1046 (Pa. Super. 2013) (*en banc*) (citation omitted), *appeal denied*, 83 A.3d 414 (Pa. 2013).

> The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Green**, 76 A.3d 575, 582 (Pa. Super. 2013) (citation omitted; italics added), *appeal denied*, 87 A.3d 318 (Pa. 2014).

Furthermore, we note that this was a bench trial. It is axiomatic that "a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014); **see also**

*Commonwealth v. Flynn*, 460 A.2d 816, 823 n.13 (Pa. Super. 1983) (stating that this Court "presume[s] that the [trial] court, which sat as factfinder in this case, followed its own instructions[]").

As noted above, the trial court sustained all of Appellant's objections to the offending statements. N.T., 4/7/14, at 103; N.T., 4/8/14, at 35. The trial court specifically noted on the record during the Commonwealth's summation that it would "disregard [the] statement" regarding Appellant not explaining his presence in Whitemarsh Township. N.T., 4/8/14, at 35. Furthermore, the trial court, in announcing its verdict, specifically noted that it had not considered Detective Zadroga's mentioning Appellant's other arrest. *Id.* at 38. Appellant acknowledges that we presume the trial court followed its own rulings and instructions but argues "[i]t is unknown what affect [sic] the Commonwealth's violations … had upon the trial court." Appellant's Brief at 36; *see also id.* at 44 (same). However, beyond this bald allegation, Appellant has not pointed to any evidence from the record to overcome the presumption that the trial court followed the law. In the absence of any argument in this regard, we agree with the Commonwealth that any potential error was harmless beyond a reasonable doubt, as Appellant did not suffer any prejudice. *See Luster*, *supra*; *Green*, *supra*.

In Appellant's sixth issue, Appellant argues that the trial court erred in not conducting a colloquy concerning his waiver of his right to testify in his own defense. Appellant's Brief at 37. Confusingly, despite framing the issue

- 17 -

in his brief in this manner, Appellant immediately concedes "there is no requirement to conduct a colloquy, before the decision to waive one's right to testify is made." *Id.* This is consistent with our cases. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1137 n.3 (Pa. Super. 2003), *appeal denied*, 845 A.2d 816 (Pa. 2004); *accord Commonwealth v. Todd*, 820 A.2d 707, 712 (Pa. Super. 2003), *appeal denied*, 833 A.2d 143 (Pa. 2003). As Appellant concedes that no colloquy is required as a matter of law, he is not entitled to relief on this issue.

Lastly, we address Appellant's seventh issue. Therein, Appellant argues that the trial court erred in not conducting an on-the-record colloquy as to Appellant's rejection of a plea offer from the Commonwealth. Appellant's Brief at 39-42. Appellant relies exclusively on the United States Supreme Court's decision in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), which pertains to claims of ineffective assistance of counsel. This Court has explained the import of *Lafler* on Pennsylvania law in the following terms.

> *Lafler* involved a criminal defendant who elected to proceed to trial rather than plead guilty based upon counsel's advice that the [state] would be unable to prove intent to kill because the defendant shot the victim below the waist. *Lafler,* 132 S.Ct. at 1383. The defendant received a mandatory sentence of incarceration more than three times longer than had been offered by the Commonwealth in the initial plea agreement. *Id.* It was uncontested that counsel's advice "fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment, applicable to the States through the Fourteenth Amendment." *Id.*

- 18 -

*Commonwealth v. Lewis*, 63 A.3d 1274, 1280 (Pa. Super. 2013). The Court concluded that Lafler had suffered prejudice and the correct remedy in such a circumstance was for the state to reoffer the plea agreement. *Lafler*, *supra* at 1391.

As this Court has explained, *Lafler* pertains to claims involving ineffective assistance of counsel when trial counsel gives allegedly deficient advice surrounding a guilty plea offer. However, *Lafler* does not stand for the proposition suggested by Appellant, that the trial court is legally required to perform an on-the-record colloquy regarding every plea offer made by the Commonwealth and rejected by a defendant. Appellant's Brief at 40. As noted above, Appellant relies exclusively on *Lafler*, and he has cited no other authority for this proposition. Based on these considerations, we reject Appellant's reliance on *Lafler*, and deem this claim to be without merit.[8]

---

[8] To the extent Appellant's brief can be read to allege ineffective assistance of trial counsel, we do not entertain such claims on direct appeal. ***See generally*** Appellant's Brief at 38. We note that our judgment in this case does not foreclose Appellant from bringing a claim of ineffective assistance of counsel pursuant to the Post Conviction Relief Act (PCRA) in the future. ***See generally Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013) (stating that in general, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal[]").

Based on the foregoing, we conclude all of Appellant's issues on appeal are either waived or devoid of merit. Accordingly, the trial court's August 27, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2016