460 A.2d 816

**COMMONWEALTH of Pennsylvania,**

v.

**Thomas J. FLYNN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1982.

Filed May 20, 1983.

Petition for Allowance of Appeal Denied Sept. 20, 1983.

Charles B. Coleman, Assistant Public Defender, Reading, for appellant.

George C. Yatron, District Attorney, Reading, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

CAVANAUGH, Judge:

Appellant, Thomas J. Flynn, was convicted by the Honorable Arthur Saylor of rape,[1] indecent assault,[2] robbery,[3] burglary,[4] theft,[5] and two violations of the Pennsylvania Uniform Firearms Act.[6] Following the denial of post-verdict motions, appellant was sentenced to ten to twenty years imprisonment for rape, to run consecutively to the sentence appellant was already serving, and concurrent terms of imprisonment totalling ten to twenty years for the remaining charges. In this appeal, appellant argues that (1) the evidence supporting his convictions was insufficient, contrary to the law and evidence and against the weight of the evidence, (2) the lower court erred in denying his motions to suppress identification evidence, (3) the lower court improperly permitted a psychiatrist to testify over his claim of psychiatrist-patient privilege, and (4) his sentence was excessive. For the following reasons, we reverse the judgment of sentence for violating the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6103, vacate the judgments of sentence for indecent assault and theft and affirm the judgments of sentence for the remaining charges.

In deciding the sufficiency of evidence, we must accept as true all the evidence, and the reasonable inferences therefrom, upon which the factfinder could have based its verdict and then ask whether that evidence, viewed in a light most favorable to the Commonwealth as verdict winner, was

1. 18 Pa.C.S.A. § 3121.

2. 18 Pa.C.S.A. § 3126.

3. 18 Pa.C.S.A. § 3701.

4. 18 Pa.C.S.A. § 3502.

5. 18 Pa.C.S.A. § 3921.

6. 18 Pa.C.S.A. §§ 6103, 6106.

sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Parker,* 494 Pa. 196, 198, 431 A.2d 216, 217 (1981); *Commonwealth v. Stockard,* 489 Pa. 209, 212–213, 413 A.2d 1088, 1090 (1980). It is settled law that while guilt may be proved by direct or circumstantial evidence, it may not rest upon mere suspicion or conjecture. *Commonwealth v. Gray,* 297 Pa.Super. 123, 125, 443 A.2d 330, 331 (1982); *Commonwealth v. Jones,* 291 Pa.Super. 69, 72, 435 A.2d 223, 225 (1981); *Commonwealth v. Beauford,* 286 Pa.Super. 297, 300, 428 A.2d 1000, 1002 (1981). Using this standard, the facts adduced at appellant's trial may be summarized as follows.

On the morning of September 29, 1979, Beverly Gehris was working at the Skyland Factory Outlet in Reading, Pennsylvania when appellant appeared with a transparent stocking over his head. When Gehris screamed, appellant told her not to scream again or "I'll kill ya." Gehris noticed that appellant had his hand on a gun at his waistline. Appellant next asked Gehris for the keys to the cash register, disappeared momentarily, and then returned. Before he left the store, appellant forced Gehris to disrobe and have sexual intercourse with him. After the incident, Gehris discovered that $133 was missing from the cash box and also a canvas bag containing $50 in change.

At trial, Gehris unequivocally identified appellant as her assailant.

Appellant, testifying in his own defense, stated that he was asleep on the morning of September 29 and did not awake until that afternoon. Alternatively, he averred that he "wasn't too well" that day, having been released from a hospital a few weeks earlier, after which time he felt the Holy Spirit, thought he saw the devil and heard voices. (N.T. 104). Appellant did not recall, however, if he heard voices on September 29; he did not see the devil on that date.

Also testifying for the defense was psychiatrist Joel Podolsky. Dr. Podolsky, who examined appellant at his counsel's request on November 28, 1979, diagnosed him as

paranoid schizophrenic. While Dr. Podolsky was aware that appellant had received a similar diagnosis when he was hospitalized in August, 1979, he could not state an opinion as to whether appellant continued to suffer from that condition after August. He was, moreover, unable to form any opinion regarding whether appellant was criminally responsible for the acts he allegedly committed on September 29. In fact, Dr. Podolsky was "skeptical" whether anyone could render such a hindsight opinion.

In rebuttal, the Commonwealth presented the testimony of Dr. Philip Rodenberger, a psychiatrist who treated appellant at Reading Hospital from August 8–August 11 and August 27–August 31 for paranoid schizophrenia. In Dr. Rodenberger's opinion, appellant was legally sane when discharged on August 31 and, although he never evaluated him at the time of these crimes, also was of the opinion that appellant was criminally responsible on September 29.

At the conclusion of trial, the lower court made the following findings: (1) appellant committed each of the acts charged beyond a reasonable doubt, (2) appellant knew the nature and quality of his acts and that his acts were wrong beyond a reasonable doubt, and (3) even without the Commonwealth's rebuttal evidence, appellant's sanity was established beyond a reasonable doubt by lay witnesses. (N.T. 191).

Appellant states that the evidence was insufficient because his convictions were based solely on Ms. Gehris' testimony. Specifically, appellant argues that (1) no medical evidence that a rape was committed was offered by the prosecution, (2) the victim's description of appellant's appearance was contradictory and also unreliable because she was emotionally distressed throughout the incident, and (3) his identification by the victim was the product of a suggestive preliminary hearing procedure.

 Appellant's first claim is easily disposed of for it is settled that the victim's uncorroborated testimony, if believed, is sufficient to support appellant's rape conviction.

*See Commonwealth v. King,* 287 Pa.Super. 105, 109–110, 429 A.2d 1121, 1123 (1981); *Commonwealth v. Stoner,* 284 Pa.Super. 364, 369, 425 A.2d 1145, 1148 (1981). 18 Pa.C.S.A. § 3106. As to appellant's second claim, the effect, if any, of the victim's emotional distress on her description of appellant's appearance goes to the weight of the evidence and is within the province of the factfinder. Similarly within the province of the factfinder is the consideration of any variances in testimony for this goes to the credibility of witnesses and not the sufficiency of the evidence. *Commonwealth v. Galloway,* 495 Pa. 535, 539, 434 A.2d 1220, 1222 (1981). We find no basis for concluding that the victim's testimony was "so unreliable and/or contradictory as to make a verdict based thereon pure conjecture..." *Commonwealth v. Cristina,* 481 Pa. 44, 51, 391 A.2d 1307, 1310 (1978), *cert. denied,* 440 U.S. 925, 99 S.Ct. 1255, 59 L.Ed.2d 479 (1979). Finally, since we conclude that Ms. Gehris' identification of appellant was independently based, any suggestiveness which may have occurred at the preliminary hearing did not render her in-court identification inadmissible. *See* pp. 821 *infra.*

■ We, thus, find the evidence sufficient to support appellant's convictions for each of the crimes charged with the exception of 18 Pa.C.S.A. § 6103.[7]

■ We must, however, reverse appellant's judgment of sentence for violating 18 Pa.C.S.A. § 6103.[8] That section provides as follows:

**7.** Appellant's argument section also states that the verdict was contrary to the law, evidence and against the weight of the evidence. He does not, however, state how this was so. In any event, we do not find that the verdict was so contrary to the weight of the evidence "as to shock one's sense of justice and to make the award of a new trial imperative." *Commonwealth v. Barnhart,* 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981). Nor do we find the verdict otherwise contrary to law or the evidence.

**8.** Although appellant did not raise a specific challenge to the propriety of his conviction under 18 Pa.C.S.A. § 6103, we nonetheless address that claim in light of the importance of assuring that an accused is not found guilty of an offense which is not even a crime in Pennsylvania.

### § 6103. Crimes committed with firearms

If any person shall commit or attempt to commit a crime of violence when armed with a firearm contrary to the provisions of this subchapter, he may, in addition to the punishment provided for the crime, be punished also as provided by this subchapter.

■ In *Commonwealth v. Simpson*, 302 Pa.Super. 287, 293, 448 A.2d 640, 643 (1982) (citations omitted), we stated "[a] defendant may not be convicted under § 6103, for that provision merely provides that a violation under Sub-Chapter 61 of the Crimes Code does not merge with a crime of violence for purposes of sentencing; it does not create a separate offense." Accordingly, the judgment of sentence imposed for violating 18 Pa.C.S.A. § 6103 is reversed.[9]

Even if the evidence is sufficient, appellant further argues that the Commonwealth failed to prove his sanity beyond a reasonable doubt. The threshold question is whether sanity was ever properly presented by appellant so as to trigger the Commonwealth's burden of proof. *See Commonwealth v. Tempest*, 496 Pa. 436, 440, 437 A.2d 952, 954 (1981); *Commonwealth v. Demmitt*, 456 Pa. 475, 483, 321 A.2d 627, 632 (1974).

As we have said, appellant's defense was one of alibi, i.e., that he was asleep at home on the morning of these crimes. The defense of insanity was raised by appellant only to the extent that he testified that he had been hospitalized for

Cf. *Commonwealth v. Von Aczel*, 295 Pa.Super. 242, 441 A.2d 750 (1981).

9. In *Simpson*, we vacated the judgment of sentence under 18 Pa.C.S.A. § 6103 "as no evidence was presented as to any violation of the Uniform Firearms Act." 302 Pa.Super. at 293, 448 A.2d at 643. We think this statement erroneously implies that an accused can be convicted under 18 Pa.C.S.A. § 6103 in the event he is also found guilty of another violation of the Pennsylvania Uniform Firearms Act. Our understanding of 18 Pa.C.S.A. § 6103 is that one may never be convicted under that provision of The Crimes Code, notwithstanding the existence of another firearms charge under 18 Pa.C.S.A. § 6101 *et seq. See Commonwealth v. Turner*, 265 Pa.Super. 486, 402 A.2d 542 (1979). Rather, 18 Pa.C.S.A. § 6103 establishes only that the sentence for a firearms violation will not merge with the sentence for a crime of violence.

auditory and visual hallucinations one month earlier, and again, two months later. Although he stated that during September, 1979, he was hearing voices "off and on," he did not remember whether he did so on September 29. He testified that he did not see the devil on that date. The sole other evidence presented in support of an insanity defense was the testimony of Dr. Podolsky. Dr. Podolsky was unable to form any opinion as to whether appellant was criminally responsible at the time of this incident.

It is obvious that the defenses of alibi and insanity are completely incompatible: one cannot, on the one hand, state that he was not at the crime scene at all and then, on the other hand, contend that if he was there, he was "labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know what he was doing was wrong." *Commonwealth v. Woodhouse*, 401 Pa. 242, 250, 164 A.2d 98, 103 (1960) (footnote omitted), quoting *The Queen v. M'Naghten*, 10 Cl. and Fin. 200, 8 Eng.Rep. 718 (1843). We believe the record suggests that appellant's insanity defense was contrived, and that there was, therefore, no insanity issue for the Commonwealth to meet. Since, however, that question is best decided by the fact-finder, and the lower court apparently determined that insanity was properly raised, we will consider whether the Commonwealth met its requisite burden of proof. *Compare Commonwealth v. Thompson*, 274 Pa.Super. 44, 49–50, 417 A.2d 1243, 1246–1247 (1979) (upholding lower court determination that proffered insanity defense was a sham).

■ We agree that the Commonwealth met its burden of proving appellant's sanity. As we have stated, there was no conclusive testimony presented at trial that appellant was not sane when he committed these crimes. By contrast, the Commonwealth produced testimony of Detective Lorrin Young who spoke to appellant the day following the incident. Detective Young testified that, on that date, appellant appeared coherent and rational and that he gave responsive answers to the questions posed. (N.T. 94–96).

Moreover, the victim's description of her assailant's conduct does not suggest that appellant was insane. Even where expert psychiatric testimony supports an insanity defense, that defense can be disproved by the contradictory evidence of lay witnesses. *Commonwealth v. Tyson,* 485 Pa. 344, 352–353, 402 A.2d 995, 999 (1979); *Commonwealth v. Young,* 276 Pa.Super. 409, 417, 419 A.2d 523, 527 (1980). In this case, there was no psychiatric testimony of insanity to even rebut. Accordingly, we find that the Commonwealth met its burden of proving appellant's sanity by lay witnesses.[10]

Appellant's second claim is that the victim's photographic, preliminary hearing and in-court identifications should have been suppressed. With respect to his preliminary hearing claim, appellant argues that he was the only black male in the courtroom, was seated at counsel table and that the victim knew that he had been charged with two other rapes. Those factors, appellant contends, rendered the preliminary hearing "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). We disagree.

At the suppression hearing, Beverly Gehris testified that she first saw appellant at the preliminary hearing as he was walking past the doorway in the courtroom; she was outside. Thus, while appellant was the only black male at that hearing, the victim's recognition of him occurred before the hearing began. Gehris further stated that her identification of appellant was not influenced by the police. Nor was she told by the police that appellant had been arrested in connection with other rape cases.[11]

**10.** We purposefully have not considered the psychiatric testimony of Dr. Philip Rodenberger since the lower court explicitly found appellant's sanity established beyond a reasonable doubt by lay witnesses *"even without Dr. Rodenberger's testimony."* (N.T. 191) (emphasis added).

**11.** At trial, Gehris acknowledged that she read in a newspaper that appellant was charged with two other rapes. It is unclear, however, when that article appeared in the newspaper. She further stated that,

■ After hearing the evidence, the lower court found as a fact that Gehris' preliminary hearing identification was made without the suggestion or influence of anyone and was instead based on her vivid recollection of appellant as the male who raped her on September 29. The court further concluded that there were no suggestive factors involved in the identification process. These findings and conclusions are adequately supported by the record and we find no basis for disturbing them. *See Commonwealth v. Davis*, 491 Pa. 363, 368, 421 A.2d 179, 181 (1980) (citing cases on scope of review of the lower court's rulings on suppression motions).

■ In any event, we find that Gehris' in-court identification of appellant had a basis independent of the preliminary hearing identification. *Commonwealth v. Townsend*, 280 Pa.Super. 155, 421 A.2d 452 (1980); *Commonwealth v. Keaton*, 276 Pa.Super. 518, 419 A.2d 578 (1980). The evidence presented at the suppression hearing established that the criminal episode lasted approximately fifteen minutes during which time appellant and the victim stood fact to face, within inches, for at least ten minutes. Although appellant wore a nylon stocking over his head, it was transparent and did not distort his facial features. Gehris specifically stated that she looked directly at her assailant's face for the purposes of later identification. Weighing this evidence in light of the factors to be considered in determining whether the in-court identification did have an independent basis, *See Commonwealth v. Townsend, supra*, we conclude that the victim's in-court identification was properly admitted.

Appellant also contends that the lower court should have granted his motion to suppress the victim's photographic identification of him because the array from which he was identified was not produced by the Commonwealth. This, appellant argues, rendered him unable to determine whether the display was suggestive. In *Commonwealth v. Jack-*

on the day of the preliminary hearing in this case, no one told her that appellant had hearings in other rape cases. (N.T. 80).

*son,* 227 Pa.Super. 1, 323 A.2d 799 (1974), we held that the failure to produce a photo array violated defendant's due process rights. This case is distinguishable from *Jackson* since, in that case, the police made no record of which photos from a large selection were shown to the victim. Furthermore, the confrontation between the victim and defendant was not conducive to a strong identification; thus, we found that the nonproduction of the photographs prejudiced defendant.

 Here, on the other hand, police were not able to produce the exact array of twenty-five photographs shown to the victim. They did, however, display a book similar to the one used which contained sixteen of the original photographs, including one of the two shown of appellant. At the suppression hearing, Detective Lorrin Young described the photographic identification procedure and testified as to the victim's immediate recognition of appellant. Both Detective Young and Ms. Gehris denied that any influence has been exerted to compel an identification.

Moreover, unlike in *Jackson,* the confrontation between the victim and appellant was conducive to a strong identification. The Commonwealth's failure to produce the exact photographic array did not, therefore, prejudice appellant.

 Finally, *Jackson* does not require the suppression of the victim's independently based in-court identification. *Commonwealth v. Sutherland,* 305 Pa.Super. 1, 5, 451 A.2d 1, 3 (1982). We thus reject appellant's suppression claims.

 Appellant next contends that the lower court erred in allowing psychiatrist Philip Rodenberger to testify over appellant's claim of psychiatrist-patient privilege. His argument is two-fold. He first argues that such testimony was excludible under 42 Pa.C.S.A. § 5944, Confidential Communications to Licensed Psychologists.[12] Secondly, cit-

12. We note that the privilege addressed in 42 Pa.C.S.A. § 5944 is specifically limited to licensed psychologists. Dr. Rodenberger is a psychiatrist. *But see In re B,* 482 Pa. at 489, 394 A.2d at 428 (concur-

ing *In re B,* 482 Pa. 471, 394 A.2d 419 (1978), he argues that allowing the psychiatrist's testimony violated his constitutional right to privacy. While the issue of the existence and scope of the psychiatrist-patient privilege is certainly a fascinating one, we need not address it here. Dr. Rodenberger's testimony was introduced by the Commonwealth to rebut appellant's suggestion that he might have been insane on September 29. In considering appellant's proffered insanity defense, however, the lower court specifically stated that it found appellant sane beyond a reasonable doubt excluding the testimony of Dr. Rodenberger. We, too, have not considered that testimony in our review of the evidence presented by the Commonwealth to disprove insanity. Thus, the admission of Dr. Rodenberger's testimony at trial, if it was in fact improper, was harmless error under *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).[13]

■ Finally, appellant argues that the sentence imposed was manifestly excessive because the court failed to consider his youth and mental history. Our review of the sentencing record reveals that the lower court considered these as well as other factors set forth in the Sentencing Code, 42 Pa.C.S.A. § 9701 *et seq.,* before imposing sentence. Appellant has not argued that the sentences exceeded the statutory limitations or that the court did not adequately state its reasons for the sentence as required by *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977). Appellant's claim, therefore, must fail.

ring opinion of Roberts, J.) ("[I]t would be arbitrary to believe that the Legislature intended the scope of a patient's privilege to depend on whether the attending therapist is a medical doctor or a psychologist").

13. Appellant urges us to disregard the lower court's statement that it did not consider Dr. Rodenberger's testimony. We will not do so and further presume that the lower court, which sat as factfinder in this case, followed its own instructions.

176

■ The court erred, however, when it imposed separate sentences for indecent assault and theft.[14]

> [I]n merger of sentences cases, we focus not only on the similarity of the elements of the crimes but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed a single criminal act, in which case there will be merger and only a single sentence may be imposed, or more than a single act, in which case there will be no merger and a sentence may be imposed for each act.

*Commonwealth v. Crocker,* 280 Pa.Super. 470, 475, 421 A.2d 818, 820–821 (1980).

■ Applying the doctrine of merger to the facts of this case, which have already been recounted in detail, we hold that for sentencing purposes, theft merges into burglary, *Commonwealth v. LeCuyer,* 290 Pa.Super. 518, 434 A.2d 1264 (1981) and also into robbery. *Commonwealth v. Walls,* 303 Pa.Super. 284, 449 A.2d 690 (1982); *Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982). We further hold that indecent assault merges into rape. *Johnson v. Commonwealth,* 499 Pa. 380, 453 A.2d 922 (1982); *Commonwealth v. Brown,* 290 Pa.Super. 448, 434 A.2d 838 (1981). Accordingly, we vacate the judgments of sentence for theft and indecent assault. Because, however, the concurrent sentences imposed for the merged offenses did not influence the sentences imposed for the principal crimes of burglary, robbery and rape, we need not remand for resentencing. *Commonwealth v. Moore,* 300 Pa.Super. at 494, 446 A.2d at 963; *Commonwealth v. Cadogan,* 297 Pa.Super. 405, 409, 443 A.2d 1185, 1187 (1982).

Judgment of sentence for violating 18 Pa.C.S.A. § 6103 is reversed. Judgments of sentence for theft and indecent assault are vacated. Judgments of sentence for rape, rob-

14. While appellant did not argue merger, this issue is not waived. *Commonwealth v. Franklin,* 306 Pa.Super. 422, 430 n. 4, 452 A.2d 797, 801 n. 4 (1982); *Commonwealth v. Moore,* 300 Pa.Super. at 493 *, 446 A.2d at 963 * (1982).

bery, burglary and violating the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6106, are affirmed.