**[J-76-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN THE INTEREST OF: J.M.G., A MINOR | : No. 18 MAP 2019 |
| | : |
| | : Appeal from the Order of the Superior |
| APPEAL OF: J.M.G. | : Court dated May 18, 2018, |
| | : Reconsideration Denied July 26, 2018, |
| | : at No. 476 MDA 2017, Affirming the |
| | : Order of the Cumberland County Court |
| | : of Common Pleas, Juvenile Division, |
| | : dated March 15, 2017 at Nos. CP-21- |
| | : CV-0003322-2017 & CP-21-JV- |
| | : 0000206-2014. |
| | : |
| | : ARGUED: September 12, 2019 |

**OPINION**

**JUSTICE MUNDY**                                                    **DECIDED: April 22, 2020**

We granted allowance of appeal in this case to decide whether the harmless error doctrine is applicable to determinations made by the trial court under Act 21[1] when the materials provided to the Sexual Offender Assessment Board (SOAB), and considered by the Commonwealth's expert in preparing his report and rendering his opinion, erroneously contained privileged communications under 42 Pa.C.S. § 5944 of the Judicial Code, establishing psychologist-patient privilege. For the reasons that follow, we conclude that the harmless error doctrine does not apply.

A brief summary of the factual and procedural circumstances follows. Appellant, J.M.G., was born in August 1996. From an early age, J.M.G. experienced chronic mental

---

[1] 42 Pa.C.S. §§ 6401-6409.

health issues and a series of resultant hospitalizations. Following an incident in 2013, during which he attempted to choke his adoptive mother (Mother), J.M.G. consented to a voluntary admission into Philhaven, a behavioral health facility treating children and adolescents. Thereafter, J.M.G. agreed to a voluntary admission into Bradley Center, a residential treatment facility. While at Bradley Center, J.M.G. made revelations to Mother that he had been sexually inappropriate with his adoptive sister. Mother referred the matter to Childline. A subsequent investigation resulted in J.M.G. being adjudicated delinquent on July 6, 2015, for one count of misdemeanor indecent assault.[2] The Superior Court affirmed the disposition order on July 12, 2016.[3] J.M.G. has been continually placed in secure, residential treatment facilities since his adjudication.

On May 19, 2016, the trial court notified J.M.G. that he was subject to evaluation by the SOAB in accordance with Section 6358 of the Juvenile Act.[4] The court's order directed the Chief Juvenile Probation officer or designee to "redact the substance of any confidential communication from the child to a psychiatrist or psychologist in the course of treatment" in accordance with 42 Pa.C.S. § 5944. The Juvenile Probation Department

---

[2] 18 Pa.C.S. § 3126(a)(7).

[3] *In the Interest of: J.M.G.: Appeal of J.M.G.*, 1547 MDA 2015, 2016 WL 4919866 (Pa. Super. July 12, 2016) (unpublished memorandum).

[4] Section 6358 directs that juveniles who are adjudicated delinquent on certain predicate sexual offenses and remain committed to a secure facility by the age of 20 "shall be subject to an assessment by the [SOAB]." 42 Pa.C.S. § 6358(a). As part of that process, the relevant probation department is tasked with assisting the SOAB to obtain "any information required by the board to perform the assessment, including, but not limited to, the child's official court record and complete juvenile probation file." *Id.* § 6358(b). The SOAB then performs an assessment to determine if the juvenile, due to a mental abnormality resulting in "difficulty in controlling sexually violent behavior," is in need of future involuntary mental health treatment. *Id.* § 6358(c). The recommendation is presented to the trial court, which supplies the report to the parties and conducts a review hearing to determine if a prima facie case has been made for further proceedings under Act 21. *Id.* § 6358(d)-(f).

assembled materials and records it planned to provide to the SOAB. A copy of these documents were supplied in advance to J.M.G.'s attorney. The trial court granted J.M.G.'s request for additional time to review the submission. On July 13, 2016, J.M.G. filed a motion for additional redactions to the records. The trial court denied the motion and the documents were supplied to the SOAB without further redaction. Specifically, the materials included an April 7, 2015 psychiatric evaluation report made by Dr. Rocco Manfredi for the purpose of J.M.G.'s treatment and in which J.M.G. made incriminating statements. Dr. Manfredi's report also contained allusions to an earlier evaluation made for therapeutic purposes in which additional unfavorable statements by J.M.G. were referenced.[5] Based on the SOAB's assessment, the trial court conducted a dispositional hearing to ascertain if a prima facie case existed to initiate civil commitment proceedings.[6]

---

[5] Following a detention/shelter care hearing, the trial court's order of March 13, 2015 transferred J.M.G. from the Cumberland County Prison to Abraxas Youth Center-Secure Detention for a psychiatric evaluation by Dr. Manfredi to be supplied to PerformCare (an association of behavioral health organizations) to review for potential appropriate facilities for the trial court to consider in ordering placement of J.M.G. *See* Trial Court Order, 3/13/2015.

[6] The pertinent procedures and requirements of Act 21 are as follows:

**§ 6403. Court-ordered involuntary treatment**

. . .

**(b) Procedures for initiating court-ordered involuntary commitment.--**

(1) Where, pursuant to the provisions of section 6358(f) (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board), the court determines that a prima facie case has been presented that the child is in need of involuntary treatment under the provisions of this chapter, the court shall order that a petition be filed by the county solicitor or a designee before the court having jurisdiction of the person pursuant to Chapter 63 (relating to juvenile matters).

On January 27, 2017, the trial court ruled that a prima facie case was established. The

Cumberland County District Attorney[7] filed a petition requesting J.M.G. be involuntarily

> (2) The petition shall be in writing in a form adopted by the department and shall set forth the facts constituting reasonable grounds to believe the individual is within the criteria for court-ordered involuntary treatment as set forth in subsection (a). The petition shall include the assessment of the person by the board as required in section 6358.
>
> . . .
>
> (4) The person shall be informed that the person has a right to be assisted in the proceedings by an independent expert in the field of sexually violent behavior. If the person cannot afford to engage such an expert, the court shall allow a reasonable fee for such purpose.
>
> . . .
>
> **(d) Determination and order.--**Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for involuntary inpatient treatment to a facility designated by the department. The order shall be in writing and shall be consistent with the protection of the public safety and the appropriate control, care and treatment of the person. An appeal shall not stay the execution of the order. If the court does not order the person to be committed for involuntary inpatient treatment by the department, the court shall order the director of the facility operated by the department pursuant to section 6406(a) to destroy the facility's copy of the petition and the assessment.

42 Pa.C.S. § 6403.

[7] The District Attorney's office acted as the County's designee for Act 21 proceedings. Hereafter, in concert with the Superior Court and the parties' briefs, we refer to the office as the Commonwealth, albeit this is not a criminal proceeding.

committed under Act 21. A civil commitment hearing occurred on March 13, 2017. Witnesses testifying at the hearing included Dr. Stein, who earlier testified as the sole prima facie hearing witness. His evaluation included a summary of Dr. Manfredi's evaluation report. Additional witnesses included Jamie Henry, a therapist at Cove Prep; Dana Evangelista, clinical services manager at Cove Prep; and Dr. Foley, who opined on behalf of J.M.G. that placement was not justified. Thereafter, the trial court delivered its order civilly committing J.M.G., effective March 14, 2017. J.M.G. filed a timely notice of appeal.

On appeal, J.M.G. challenged, *inter alia*, the trial court's failure to properly redact the materials provided to the SOAB, resulting in the inclusion of information subject to J.M.G.'s psychotherapist-patient privilege.[8] The Superior Court majority, relying on that court's decision in *In the Interest of T.B.*, 75 A.3d 485 (Pa. Super. 2013), concluded the trial court erred in failing to redact Dr. Manfredi's report. *In the Interest of: J.M.G.*, 476 MDA 2017, 2018 WL 2274825 (Pa. Super. May 18, 2018) (unpublished memorandum). In *T.B.*, the Superior Court held that Act 21 afforded no exception to the psychotherapist-patient privilege:

> To be clear, *it is not the purpose for which statements are sought that defines their privileged nature, but rather the purpose and circumstances under which the declarant made*

---

[8] The Superior Court Panel first reviewed J.M.G.'s claim that the evidence was insufficient to support the trial court's order of involuntary commitment under Act 21. Viewing all the evidence, including any improperly admitted evidence, in the light most favorable to the prevailing party below, and in consideration of the trial court's credibility determinations, the Panel concluded the evidence was sufficient to establish clearly and convincingly that J.M.G. is in need of involuntary treatment under Act 21, i.e., "due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes [him] likely to engage in an act of sexual violence." 42 Pa.C.S. § 6403(a). The Panel also rejected the Commonwealth's claim that J.M.G. waived his challenge to the trial court's redaction for failure to specify the portions of the record he sought to be further redacted. The Panel noted J.M.G. specifically identified the April 7, 2015 evaluation report by Dr. Manfredi in his motion for additional redactions.

> *them.* Consequently, statements of a juvenile made to a mental health professional while in treatment remain privileged and may be released to the SOAB only with the juvenile's written consent.

*T.B.*, 75 A.3d at 496 (emphasis original).  Thus, the court remanded to the trial court with instructions to vacate the determination by the SOAB if it found the submitted materials included any "statements, evaluations, and summaries [] made for treatment purposes and the juvenile was not represented by counsel and informed of his right against self-incrimination[.]"  *Id. at* 497.  In the instant case, the Superior Court concluded that Dr. Manfredi's evaluation was made for therapeutic purposes, and that J.M.G. had not been represented by counsel during the evaluation nor advised of his rights.  The Panel therefore held that the trial court erred in failing to redact the report from the materials submitted to the SOAB.

The Panel majority proceeded to subject this holding to a harmless error analysis.  It noted that such an analysis was not engaged in by the *T.B.* Court.  However, the Panel majority noted precedent suggested that evidence admitted in contravention of the psychotherapist-patient privilege may be subject to harmless error analysis.  *In the Interest of: J.M.G.* 476 MDA 2017, at *5 (citing *Commonwealth v. Flynn*, 460 A.2d 816, 823 (Pa. Super. 1983)).  In *Flynn*, the Superior Court affirmed the trial court's rejection of Appellant's proffered insanity defense, notwithstanding admission of purported psychiatrist/patient privileged communications.  Without determining the existence or scope of the privilege, the court noted the trial court stated it rejected the insanity defense without considering the challenged evidence, thus even if the testimony was improper, its admission in that case was harmless.  *Id.*  The majority here found that Dr. Stein's conclusions were not dependent on the improperly disclosed communications, but were

supportable on other properly disclosed information submitted to the SOAB. *Id.* at *5-6.

Further the majority noted that the opinions of Dr. Stein and J.M.G.'s expert did not

disagree that J.M.G. has a mental abnormality that inclines him to sexual offending. The

differences pertained to the appropriateness of inpatient treatment, which, according to

the majority, was not relevant to the improperly admitted materials. *Id.*

The dissent fully agreed with the majority's determination and reasoning pertaining

to the trial court's failure to redact Dr. Manfredi's evaluation report from the materials

submitted to the SOAB. *J.M.G.* 476 MDA 2017, at *6 (Bowes, J., dissenting). However,

the dissent disagreed with the majority's harmless error analysis, noting that the purpose

underlying the psychotherapist-patient privilege is grounded in the therapeutic needs of

patients suffering from mental health conditions. *Id.* at *7. Because candor is essential

to effective treatment, assurance that therapeutic communications are safe from

unauthorized disclosure is essential. Citing the *T.B.* Court's remand instructions to the

trial court in that case, directing that the court "shall" vacate the determination of the SOAB

if privileged materials had been erroneously submitted, the dissent opined that harmless

error analysis is inappropriate in an Act 21 context.[9] *Id.* at *8. The dissent noted it would

remand the matter with resubmitted materials properly redacted for assessment by

individuals untainted by the improper disclosures. *Id.* at *9.

---

[9] Alternatively, the dissent contended that, even if harmless error analysis were proper, the error in this case was not harmless. Recounting the myriad statements by J.M.G. contained in Dr. Manfredi's report, the dissent deemed them to be significant to the issue of J.M.G.'s mental abnormality and likeliness to commit further acts. Additionally, the dissent noted Dr. Stein testified that he considered all the materials submitted to the SOAB in deriving his conclusions.

We granted J.M.G.'s petition for allowance of appeal to consider the following question:

> Where the trial court violates the psychiatrist/patient privilege of a minor who had previously been placed in a juvenile delinquency facility and ordered to participate in ongoing mental health treatment, and where the trial court allowed, over objection, statements made by the juvenile to his psychiatrist and/or psychologist to be provided to the Sexual Offender Assessment Board (SOAB) pursuant to an Act 21 civil commitment procedure, is the violation harmless error?

*In the Interest of: J.M.G.*, 202 A.3d 42 (Pa. 2019).[10]

In his brief to this Court, citing extensively from the Superior Court dissent, J.M.G. argues both that harmless error analysis is not appropriate when psychotherapist-patient privilege is violated in Act 21 cases, and that even if such analysis is applied, the facts of this case do not support a conclusion that the error was harmless. Unlike the dissent, J.M.G. urges this court not to order a remand for further untainted proceedings, but to discharge him from any Act 21 commitment.[11]

The Juvenile Law Center and the Pennsylvania Psychiatric Society filed a brief as Amici Curiae in support of J.M.G. Amici note a foundational tenet of our juvenile system

---

[10] The applicability of the harmless error doctrine to Act 21 presents a pure question of law. When reviewing questions of law, we exercise a plenary scope of review and de novo standard of review. *In re Vencil*, 152 A.3d 235, 241(Pa. 2017).

[11] J.M.G. includes an additional section of his brief urging this Court to adopt the holding in *T.B.* that the psychotherapist-patient privilege is applicable to Act 21 proceedings, precluding admissibility of such privileged communications. The question accepted for review in this appeal presupposes the applicability of the privilege to the inclusion of such communications to the SOAB and admission of such material in subsequent Act 21 hearings. The question also accepts the fact that privileged material was erroneously disclosed in the submission to the SOAB in this case. The question to be resolved in this appeal is the applicability of the harmless error doctrine when privileged communication has been erroneously admitted.

is that minors who commit delinquent acts are amenable to treatment and rehabilitation. To this end, a myriad of services are employed to address the particular needs of each minor in the system. Among the arsenal of treatment options is, where appropriate, mental health treatment. For effective mental health treatment, a patient must be open to treatment, be able to provide candid disclosure to the treatment provider, and trust in the recommendations of the treatment offered. The psychotherapist-patient privilege is an essential protection, without which the success of mental health treatment would be undermined. Amici contend that subjecting a violation of psychotherapist-patient privilege to a harmless error analysis "upends the system." Amici Brief at 11. The evidentiary harm according to Amici, is irrelevant. "[I]f the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege … is little better than no privilege at all.'" *Id.* at 11 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 17 (1996) (internal citation omitted)).

In its brief, the Commonwealth argues that this Court, when adopting the validity of judicial employment of harmless error analysis, recognized that such practice could "denigrate the interests and policies which both constitutional and non-constitutional rules promote." Commonwealth Brief at 12 (quoting *Commonwealth v. Story*, 383 A.2d 155, 164 (Pa. 1978)). However, the Court in *Story* mitigated this concern by placing the burden on the Commonwealth to establish harmlessness beyond a reasonable doubt. Therefore, the Commonwealth argues that the prejudicial impact at issue with harmless error analysis is limited to the effect the improperly admitted evidence has in relation to the

inquiry at issue, not in relation to the tangential policy considerations protected by the privilege.

The Commonwealth notes that harmless error may be found where the tainted evidence is merely cumulative of properly admitted evidence, where the evidence was not prejudicial, or where the prejudicial impact is *de minimis*.  The Commonwealth argues the Superior Court majority correctly determined that the records properly submitted to Dr. Stein contain ample support for his conclusions without consideration of the materials disclosed in violation of J.M.G.'s psychotherapist-patient privilege.  The Commonwealth discounts J.M.G.'s reliance on *T.B.*, noting that the Court in that case remanded to the trial court for a determination of whether a breach of the privilege had occurred.  Nothing in *T.B.* precluded application of harmless error analysis where, as here, the Superior Court determined evidence had been disclosed in violation of the privilege.

To consider these arguments, we begin with a review of the privilege at issue.  The psychotherapist-patient privilege has been codified since 1972[12] and currently provides as follows:

> **§ 5944. Confidential communications to psychiatrists or licensed psychologists**
>
> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

---

[12] The provision, originally enacted at 63 P.S. § 1213, was repealed and reenacted at 42 Pa.C.S. § 5944 on July 9, 1976.  The provision was amended December 22, 1989 with the addition of "psychiatrist" to the language.

42 Pa.C.S. § 5944. "The psychiatrist/psychologist-patient privilege is based upon a strong public policy that confidential communications made by a patient to a psychiatrist or psychologist should be protected from disclosure, absent consent or waiver." *Commonwealth v. Counterman*, 719 A.2d 284, 295 (Pa. 1998). This is to ensure and foster "confidence in the [patient] and to encourage full disclosure to the psychologist [and psychiatrist] . . . . [T]he privilege is designed to promote effective treatment and to insulate the [patient's] private thoughts from public disclosure." *Commonwealth v. Fewell*, 654 A.2d 1109, 1112-13 (Pa. Super. 1995) (quoting *Commonwealth v. Kyle,* 533 A.2d 120, 128 (Pa. Super. 1987)).

Section 5944 makes clear that the psychotherapist-patient privilege is interpreted in the same manner as the attorney-client privilege.[13] This Court has noted the attorney-client privilege

---

[13] The pertinent provisions follow:

### § 5916. Confidential communications to attorney

In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5916.

### § 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same,

is grounded in a policy entirely extrinsic to protection of the fact-finding process; its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue. As a consequence, the damage to the administration of justice occurs when the sanctity of the confidence is improvidently violated, not when the evidence is given substantive consideration.

*Estate of Kofsky*, 409 A.2d 1358, 1362 (Pa. 1979) (internal citations omitted); *see also Commonwealth v. Maguigan*, 511 A.2d 1327, 1333-34 (Pa. 1986) (same). "The intended beneficiary is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." *In re Search Warrant B–21778*, 521 A.2d 422, 428 (Pa. 1987).

Similarly, the policy goals underlying the psychotherapist-patient privilege is not dependent on evidentiary value or "protection of the fact finding process." Rather, it is designed to strengthen and protect the therapeutic relationship between a patient and his or her mental health treatment providers, without which the goals of this Commonwealth's mental health treatment policies could not be achieved. The United States Supreme Court, in rejecting application of an evidentiary exception or balancing test between the interests protected by the State-provided privilege and the fact-finding function of the federal courts, held "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17.

---

unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5928.

We next recount the development of the harmless error doctrine in this Commonwealth. In 1978, this Court set forth a unifying standard for applying a harmless error analysis to errors involving state rules by adopting the same test required by federal courts for federal constitutional errors in criminal cases. *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978). That standard provides that an error may be deemed harmless "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.* at 162; *see also Chapman v. California*, 386 U.S. 18 (1967). "[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless." *Story,* 383 A.2d at 164 (citation and internal quotation marks omitted). Further the burden to establish harmlessness is placed on the Commonwealth. *Id.* at 162 n.11. The assignment of the burden and the beyond-reasonable-doubt standard obviated any need to distinguish between errors of a constitutional dimension from other types of error. *Id.*

The *Story* Court then reviewed the three analytical approaches employed by past cases to assess whether an error is harmless. The first focuses solely on the prejudicial impact of the erroneously admitted evidence, finding the error harmless only if such impact is *de minimis*. *Id.* at 164-65. The second approach views whether the improper evidence, the prejudicial impact of which may not be *de minimis*, is nevertheless merely cumulative of properly admitted evidence. *Id.* at 165. The third analytical approach reviews whether the overall untainted evidence of guilt is so overwhelming that the prejudicial effect of the improper evidence could not have contributed to the jury's verdict. We held that if using this approach, "a court may rely only on uncontradicted evidence.

The uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 168. These principles have been routinely applied in criminal cases.

In relation to civil cases, this Court has explained that the harmless error doctrine is subsumed in a trial court's two-step review of motions for new trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000). First a court must review whether an error occurred, and secondly whether the error warrants a new trial. *Id.* "The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial . . .; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Id.* (citations omitted). Appellate review of a trial court's decision to grant or deny a motion for new trial involves a similar two-stage analysis. "First, the appellate court must examine the decision of the trial court that a mistake occurred. . . . If the appellate court agrees . . . that a mistake occurred, . . . [t]he appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial." *Id.* at 1122-23 (citations omitted).

Finally, we note the parameters and goals of Act 21 proceedings. Act 21 is a legislative amendment to the Juvenile Act that provides for assessment of juveniles who have been adjudicated delinquent for an act of sexual violence and have been subject to an institutional placement where he or she has remained through his or her 20th birthday.

> In passing [Act 21], the Legislature foresaw that some of these juveniles were sexual offenders (and potential re-offenders) in need of treatment for their own benefit and for the protection of the public. The Legislature provided a program of

involuntary civil commitment to serve those needs. In the absence of such a program, these offenders would presumably be released outright once they reached age 21.

*In re K.A.P.*, 916 A.2d 1152, 1162 (Pa. Super. 2007), *affirmed per curiam*, 943 A.2d 262 (Pa. 2008). Thus, while protection of the public constitutes one motivation for its enactment, at its core Act 21 is about assuring continued, needed mental health treatment.[14]

With these legal foundations in mind, we address the issue presented. The rationale behind the harmless error doctrine is judicial efficiency.

> [T]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one."

*Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (quoting *Commonwealth v. Thornton*, 431 A.2d 248, 251 (Pa. 1981).

In *Flynn*, the Superior Court addressed the appellant's challenge to the admission of evidence he claimed was subject to the patient-psychiatrist privilege. Without determining whether a breach of the privilege in fact occurred, the court held that the

---

[14] We recently granted allowance of appeal in another case to address the following question:

> Is Act 21 punitive, such that its retroactive application to [Petitioner] and its mechanism for determining whether an individual is a sexually violent delinquent child are unconstitutional under *Commonwealth v. Muniz*, 164 A.[3]d 1189 (Pa. 2017) and *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017)?

*In re H.R.*, 207 A.3d 906 (Pa. 2019). That appeal remains pending. The issues advanced therein do not preclude our disposition of the issues presented in this appeal.

admission of the evidence, i.e., the psychiatrist's testimony offered in rebuttal to the defendant's insanity defense, if improper, was harmless. *Flynn*, 460 A.2d at 174-75. In February 1995, the Superior Court again applied the doctrine to conclude that evidence admitted in violation of a defendant's patient-psychiatrist privilege was merely cumulative of untainted evidence and therefore harmless. *Fewell*, 654 A.2d at 1115-16. In May of 1995, this Court applied the harmless error doctrine to evidence admitted in violation of the spousal communication privilege provided for in Section 5914 of the Judicial Code. *Commonwealth v. May*, 656 A.2d 1335, 1343 (Pa. 1995). In so doing, we cited *Flynn* with approval as an example of the propriety of applying the harmless error doctrine to evidence admitted over an assertion of privilege. *Id.*

As noted by the Commonwealth, this Court in *Story* imposed a high burden to establish harmless error to avoid erosion of the protections underlying the rules whose violation is being assessed in individual cases.

> But courts must be careful in applying the harmless error rule, for if the violation of a rule is too readily held harmless, the importance and effectiveness of the rule is denigrated. We believe that the "beyond a reasonable doubt" standard reaches the most reasonable balance between the consideration of judicial economy and the important policies which underlie constitutional and non-constitutional rules.

*Story*, 383 A.2d at 164. Harmless error is not applicable to all types of error. "[O]ur prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error[.]" *Chapman,* 386 U.S. at 23 (citing as examples coerced confessions, right to counsel, and impartiality of presiding judge). Such examples are deemed basic to due process and a fair trial. These principles, however, were designed for and have been applied largely in criminal cases.

Act 21 proceedings present a distinct set of concerns. Act 21 advances the goal of providing involuntary placement for continued mental health treatment to juveniles poised to age out of the juvenile system, but who still pose a risk of re-offending due to a mental defect or abnormality. For such juveniles, mental health treatment is an essential component of juvenile placement and of any continued placement under Act 21. This Court has recognized the importance of confidentiality to the therapeutic relationship and the success of treatment.

> In short, treatment of the mentally ill is too important, and the assurance of confidentiality too central to it, to risk jeopardizing the whole because of the relevance of some patient's statements to some legal proceedings. Virtually every school of psychotherapy recognizes confidentiality as the sine qua non of effective therapy.

*Matter of Pittsburgh Action Against Rape*, 428 A.2d 126, 145-46 (Pa. 1981) (internal quotation marks and citations omitted).

Of course, it is not contested in this appeal that the trial court erred in failing to redact privileged communications from the materials provided to the SOAB and included among the materials relied on by Dr. Stein. It is also true, as pointed out by the Commonwealth, that aspects of the harm occasioned by the dissemination of J.M.G.'s privileged communications in this case cannot be undone, whether or not the harmless error doctrine is employed.[15] The evidence in an Act 21 proceeding is, of necessity, largely dependent on expert testimony. In this case, the privileged communications were not admitted as evidence on their own, but were part of the materials relied on by the Commonwealth's witness in formulating an opinion. The evidence admitted was Dr.

---

[15] For example, the substance of many of J.M.G.'s privileged statements are described in the judicial opinions below, which are public records.

Stein's report and opinion testimony. Thus, the harmless error analysis engaged in by the Superior Court majority below did not involve assessing the balance of untainted evidence under any of the approaches described above, i.e., absence of prejudice, cumulative evidence, or prejudice outweighed by other uncontradicted evidence, but was an exercise in sussing out what the expert opinion would have been, absent consideration of the privileged communications.

We conclude, contrary to the Commonwealth's assertion, however, that the harm to the therapeutic relationship and the efficacy of mental health treatment that Section 5944 is designed to protect, is not entirely tangential to the factual burden in Act 21 proceedings. A primary purpose of Act 21 is to provide continued mental health treatment to a class of juvenile offenders. *Id.* The success of mental health treatment, including the willingness of the juvenile to cooperate with treatment, to be open and candid in communicating with the psychotherapist, and to trust in treatment recommendations, is dependent on the confidentiality protected by the privilege set forth in Section 5944. Erosion of the privilege can only complicate and adversely affect the fundamental rehabilitative goals of the juvenile system and any treatment ordered under Act 21. Similar to the types of constitutional errors the United States Supreme Court has deemed so basic to a fair trial that application of the harmless error doctrine is inappropriate, we deem scrupulous adherence to the psychotherapist-patient privilege to be basic to fair Act 21 proceedings. *See, e.g. Chapman,* 386 U.S. at 23. Accordingly, we hold that the harmless error doctrine is not applicable to violations of Section 5944 psychotherapist-patient privilege in Act 21 proceedings.

Finally, we address J.M.G.'s claim that the proper remedy, should this Court reverse the Superior Court's decision, would be "to [o]rder the trial court to release [J.M.G.] from any further civil commitment pursuant to Act 21." J.M.G.'s Brief at 22. Although he describes the violation of his privilege in this case as "egregious," he provides no legal support or analysis to support his position. To the contrary, we conclude it would be counterproductive to the purposes of Act 21 and J.M.G.'s juvenile placement to foreclose further involuntary inpatient commitment in this case, if such would serve the interests of J.M.G.'s treatment needs and public safety concerns. While we have held that the consideration by the Commonwealth's expert witness of privileged communications in developing his report and testimony of his opinion in this case has rendered the trial court's order invalid, we have not concluded the Commonwealth would be incapable of meeting its burden upon a review of the untainted materials provided to the SOAB. To that end, a reconsideration by personnel of the SOAB not previously involved in the review of this matter, of properly redacted records is appropriate, together with such additional proceedings that review may generate. *See J.M.G.*, 154 A.3d at *9.

Judgment of the Superior Court is reversed. The case is remanded for further proceedings in accordance with this opinion.

Chief Justice Saylor and Justices Donohue, Dougherty and Wecht join the opinion.

Justice Baer files a concurring opinion in which Justice Todd joins.

Justice Todd files a concurring opinion in which Justice Baer joins.